UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

RICK DODDS,

     Plaintiff,

v.                                                          Case No.:  2:22-cv-434-DNF

COMMISSIONER OF SOCIAL
SECURITY,

     Defendant.

_____

## **OPINION AND ORDER**

Plaintiff Rick Dodds seeks judicial review of the final decision of the Commissioner of the Social Security Administration ("SSA") denying his claim for a period of disability and disability insurance benefits and for supplemental security income benefits. The Commissioner filed the Transcript of the proceedings ("Tr." followed by the appropriate page number), and the parties filed legal memoranda setting forth their positions. Plaintiff also filed a reply brief. As explained below, the decision of the Commissioner is **AFFIRMED** pursuant to § 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

## I.    Social Security Act Eligibility, Standard of Review, Procedural History, and the ALJ's Decision

### A.    Social Security Eligibility

The law defines disability as the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death, or which has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. §§ 416(i), 423(d)(1)(A), 1382c(a)(3)(A); 20 C.F.R. §§ 404.1505(a), 416.905(a). The impairment must be severe, making the claimant unable to do his previous work, or any other substantial gainful activity which exists in the national economy. 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(A); 20 C.F.R. §§ 404.1505–404.1511, 416.905–416.911.

### B.    Standard of Review

The Commissioner's findings of fact are conclusive if supported by substantial evidence. 42 U.S.C. § 405(g). "Substantial evidence is more than a scintilla and is such relevant evidence as a reasonable person would accept as adequate to support a conclusion. Even if the evidence preponderated against the Commissioner's findings, we must affirm if the decision reached is supported by substantial evidence." *Crawford v. Comm'r*, 363 F.3d 1155, 1158 (11th Cir. 2004). In conducting this review, this Court may not reweigh the evidence or substitute its judgment for that of the ALJ, but must consider the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision. *Winschel v.*

*Comm'r of Soc. Sec.*, 631 F.3d 1176, 1178 (11th Cir. 2011) (citation omitted); *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995); *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990). Unlike findings of fact, the Commissioner's conclusions of law are not presumed valid and are reviewed under a de novo standard. *Keeton v. Dep't of Health & Human Servs.*, 21 F.3d 1064, 1066 (11th Cir. 1994); *Maldonado v. Comm'r of Soc. Sec.*, No. 20-14331, 2021 WL 2838362, at *2 (11th Cir. July 8, 2021); *Martin*, 894 F.2d at 1529. "The [Commissioner's] failure to apply the correct law or to provide the reviewing court with sufficient reasoning for determining that the proper legal analysis has been conducted mandates reversal." *Keeton*, 21 F.3d at 1066.

The ALJ must follow five steps in evaluating a claim of disability. 20 C.F.R. §§ 404.1520, 416.920. At the first step, the ALJ must determine whether the claimant is currently engaged in substantial gainful employment. 20 C.F.R. § 404.1520(a)(4)(i), (b); 20 C.F.R. § 416.920(a)(4)(i), (b). At step two, the ALJ must determine whether the impairment or combination of impairments from which the claimant allegedly suffers is "severe." 20 C.F.R. § 404.1520(a)(4)(ii), (c); 20 C.F.R. § 416.920(a)(4)(ii), (c). At step three, the ALJ must decide whether the claimant's severe impairments meet or medically equal a listed impairment. 20 C.F.R. § 404.1520(a)(4)(iii), (d); 20 C.F.R. § 416.920(a)(4)(iii), (d). If the ALJ finds the claimant's severe impairments do not meet or medically equal a listed impairment,

then the ALJ must determine whether the claimant has the residual functional capacity ("RFC") to perform his past relevant work. 20 C.F.R. § 404.1520(a)(4)(iv), (e)–(f); 20 C.F.R. § 416.920(a)(4)(iv), (e)–(f).

If the claimant cannot perform his past relevant work, the ALJ must determine at step five whether the claimant's RFC permits him to perform other work that exists in the national economy. 20 C.F.R. § 404.1520(a)(4)(v), (g); 20 C.F.R. § 416.920(a)(4)(v), (g). At the fifth step, there are two ways in which the ALJ may establish whether the claimant is capable of performing other work available in the national economy. The first is by applying the Medical Vocational Guidelines, and the second is by the use of a vocational expert. *Phillips v. Barnhart*, 357 F.3d 1232, 1239-40 (11th Cir. 2004); *Atha v. Comm'r, Soc. Sec. Admin.*, 616 F. App'x 931, 933 (11th Cir. 2015).

The claimant bears the burden of proof through step four. *Atha*, 616 F. App'x at 933. If the claimant meets this burden, then the burden temporarily shifts to the Commissioner to establish the fifth step. *Id.*; 20 C.F.R. § 404.1520(a)(4)(v), (g); 20 C.F.R. § 416.920(a)(4)(v), (g). If the Commissioner presents evidence of other work that exists in significant numbers in the national economy that the claimant is able to perform, only then does the burden shift back to the claimant to prove he is unable to perform these jobs. *Atha*, 616 F. App'x at 993.

### C.    Procedural History

On October 19, 2018, Plaintiff filed an application for a period of disability and disability insurance benefits and for supplemental security income, alleging disability beginning on August 2, 2018. (Tr. 175, 176, 437-58). The applications were denied initially and on reconsideration. (Tr. 175, 176, 209, 210). Plaintiff requested a hearing and on July 27, 2020, a hearing was held before Administrative Law Judge Mario Silva ("ALJ"). (Tr. 137-174). On August 31, 2020, the ALJ entered a decision finding Plaintiff not under a disability from August 2, 2018, through the date of the decision. (Tr. 244-59).

On January 28, 2021, the Appeals Council reviewed and remanded the case to an administrative law judge. (Tr. 264-66). On remand, the Appeals Council directed the administrative law judge to accurately describe the record, and further evaluate Plaintiff's alleged symptoms and provide rationale when evaluating the symptoms. (Tr. 266).

On remand, a second hearing was held before the ALJ on October 5, 2021. (Tr. 40-71). On October 20, 2021, the ALJ entered a decision finding Plaintiff not under a disability from August 2, 2018, through the date of the decision. (Tr. 16-33). On June 1, 2022, the Appeals Council denied Plaintiff's request for review. (Tr. 1-5). Plaintiff initiated this action on July 19, 2022, and the case is ripe for review. The

parties consented to proceed before a United States Magistrate Judge for all proceedings. (Doc. 15).

###    D.    Summary of ALJ's Decision

In this matter, the ALJ found Plaintiff meets the insured status requirements of the Social Security Act through December 31, 2023. (Tr. 21). At step one of the sequential evaluation, the ALJ found that Plaintiff had not engaged in substantial gainful activity since August 2, 2018, the alleged onset date. (Tr. 21). At step two, the ALJ found that Plaintiff had the following severe impairments: "Chronic Obstructive Pulmonary Disease (COPD), lumbar degenerative disc disease, diminished hearing, hypertension, and headaches." (Tr. 21). At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that meets or medically equals the severity of any of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925, and 416.926). (Tr. 22-23).

Before proceeding to step four, the ALJ found that Plaintiff had the following RFC:

> After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform medium work as defined in 20 [C.F.R. §§] 404.1567(c) and 416.967(c) except the individual can never climb ladders, ropes, or scaffolds, but can occasionally climb ramps or stairs; frequent balancing and stooping; occasional kneeling, couching, or crawling; limited to no more than occasional exposure to no more than moderate levels of

wetness and humidity; is limited to a noise environment that does not exceed SCO level 3, also known as moderate; is limited to no more than occasional exposure to no more than moderate levels of vibration as noted in the DOT or SCO; is limited to no more than occasional exposure to no more than moderate levels of environmental irritants, such as fumes, odors, dusts, or gases; the individual is to avoid all exposure to hazards such as unprotected moving mechanical parts or unprotected heights; the individual is limited to occupations which do not require more than occasional telephone communication.

(Tr. 24-25).

At step four, the ALJ found Plaintiff was unable to perform any past relevant work as a tire technician, construction worker I, and janitor. (Tr. 30). At step five, the ALJ found that considering Plaintiff's age (55 years old on the alleged disability onset date), education (at least high school), work experience, and RFC, there are jobs that existed in significant numbers in the national economy that Plaintiff could perform. (Tr. 30-31). Specifically, the vocational expert testified that a person with Plaintiff's limitations could perform such occupations as:

(1)   food service worker hospital, DOT 319.677-014,[1]  medium, SVP 2

(2)   dining room attendant, DOT 311.677-018, medium, SVP 2

(Tr. 32). The ALJ concluded that Plaintiff had not been under a disability from August 2, 2018, through the date of the decision. (Tr. 32).

---

[1] DOT refers to the *Dictionary of Occupational Titles*.

## II.    Analysis

On appeal, Plaintiff raises five issues:

(1)    Whether the ALJ erred in finding Plaintiff capable of performing work at a medium level by not properly considering the medical opinions of record;

(2)    Whether substantial evidence supported the ALJ's decision regarding Plaintiff's mental functioning;

(3)    Whether the ALJ properly determined whether Plaintiff could perform work at an SVP 2 level given the Explanation of Determination conflicted with this finding;

(4)    Whether the jobs cited in the decision comply with the RFC and the hypothetical questions to the vocational expert; and

(5)    Whether the ALJ erred in failing to find Plaintiff limited to light work and thereby disabled under the Medical Vocational Guidelines ("Grids").

## A.    RFC and Medical Opinions

Plaintiff argues that the ALJ found he could perform medium work despite the opinions of a consultative examiner and a treating physician who found Plaintiff not capable of performing medium work. (Doc. 20, p. 8-9). Plaintiff also contends that State agency physicians found Plaintiff's symptoms were largely supported by his physical examinations and imaging. (Doc. 20, p. 8-9). Basically, Plaintiff argues that the ALJ did not properly consider these medical opinions in finding Plaintiff able to perform medium work.

The regulations for disability cases filed after March 27, 2017 – such as this one – changed and an ALJ no longer defers or gives any specific evidentiary weight to a medical opinion. 20 C.F.R. § 404.1520c(a), 20 C.F.R. § 416.920c(a). Thus, an ALJ no longer uses the term "treating source" and does not defer or give specific evidentiary weight, including controlling weight, to any medical opinion or prior administrative medical finding. *Torres v. Comm'r of Soc. Sec.*, No. 6:19-cv-1662-ORL-PDB, 2020 WL 5810273, at *2 (M.D. Fla. Sept. 30, 2020) (citing 20 C.F.R. § 404.1520c(a)).

Instead, an ALJ assesses the persuasiveness of a medical source's opinions given these five factors, with the first two being the most important: (1) supportability; (2) consistency; (3) relationship with the claimant, including the length, frequency, and purpose of the examining and any treatment relationship; (4) specialization; and (5) other factors, such as the source's familiarity with other evidence concerning the claim, that tend to support or contradict the medical opinion. 20 C.F.R. § 404.1520c(a)-(c); 20 C.F.R. § 404.920c(a)-(c). An ALJ may but need not explain how he considers factors other than supportability and consistency, unless two or more opinions are equally persuasive on the same issue. 20 C.F.R. § 404.1520c(b)(2); 20 C.F.R. § 416.920c(b)(2).

For supportability, the revised rules provide: "The more relevant the objective medical evidence and supporting explanations presented by a medical source are to

support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be." 20 C.F.R. § 404.1520c(c)(1); 20 C.F.R. § 416.920c(c)(1). For consistency, the revised rules provide: "The more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be." 20 C.F.R. § 404.1520c(c)(2); 20 C.F.R. § 416.920c(c)(2).

The new regulations also differentiate between medical opinions and "other medical evidence." 20 C.F.R. § 404.1513(a)(2)-(3). "A medical opinion is a statement from a medical source about what you can still do despite your impairment(s) and whether you have one or more impairment-related limitations or restrictions" in the abilities listed in paragraphs (a)(2)(i) through (iv). 20 C.F.R. § 404.1513(a)(2). "Other medical evidence is evidence from a medical source that is not objective medical evidence or a medical opinion, including judgments about the nature and severity of your impairments, your medical history, clinical findings, diagnosis, treatment prescribed with response, or prognosis." 20 C.F.R. § 404.1513(a)(3).

### 1.    Dareld R. Morris II, D.O.'s Opinion

On March 5, 2019, consultative examiner Dr. Morris completed a Social Security Disability Consultative Exam. (Tr. 635-40). Plaintiff complained of back issues, headaches, hearing loss, hypertension, respiratory issues, and memory loss. (Tr. 635). Dr. Morris conducted an examination, finding Plaintiff in no acute distress and able to interact with Dr. Morris and staff appropriately. (Tr. 635). The examination resulted in generally normal results, such as normal gait and station, full pinch and grip testing, full upper and lower extremity strength, no trigger points, and intact short-term memory. But Dr. Morris noted decreased hearing to whispered voice, positive Graenslen's test bilaterally, positive sacral compression test, and +2/4 deep tendon reflexes. (Tr. 635-36). Dr. Morris found Plaintiff lacked the ability to perform work related activities, such as sitting, long standing, long walking, traveling, and concentration, and could only lift 10 lbs. (Tr. 636-37).

The ALJ thoroughly summarized Dr. Morris's examination findings and opinion. (Tr. 27). He found Dr. Morris's opinion not persuasive:

> Dr. Morris opined the claimant was limited to lifting 10 pounds, and he did not have the ability to perform activities such as sitting, long standing, and long walking. This opinion is not supported by his examination of the claimant that showed him to have normal strength, a normal gait, no trigger points during spinal examination, clear lungs, and a negative straight leg raise test. Moreover, imaging of the claimant's lumbar spine and spirometry testing have generally been mild (6F/2; 7F).

(Tr. 29).

As to supportability, the ALJ found Dr. Morris's opinion not supported by his examination, which generally showed normal results as set forth above. (Tr. 29). The ALJ also found Dr. Morris's opinion not consistent with Plaintiff's lumbar spine imaging and spirometry testing, which had been generally mild. (Tr. 29). Substantial evidence supports the ALJ's persuasiveness findings of Dr. Morris's opinion. And in finding his opinion not persuasive, the ALJ properly did not rely on Dr. Morris's extreme limitation, such as no sitting, no long walking, no long standing, and lifting limited to 10 lbs. in assessing Plaintiff's RFC.

### 2. Rajan Sareen, M.D.

On August 12, 2021, Plaintiff went to Dr. Sareen for an examination and Dr. Sareen completed a Medical Source Statement. (Tr. 753-58). Plaintiff complained of hearing loss bilaterally, lower back pain, left shoulder joint pain, difficulty walking, shortness of breath, tiredness, low energy, abdominal pain, anxiety with shortness of breath, depression, and difficulty sleeping. (Tr. 755). Dr Sareen reported that Plaintiff had to change positions several times during the examination. (Tr. 755). Plaintiff's exam had generally normal results, except decreased hearing bilaterally, positive tenderness in the spine, and decreased range of motion in several joints. (Tr. 756). Dr. Sareen limited Plaintiff in an 8-hour workday to, among other things: lifting or carrying less than 10 lbs. occasionally; standing or walking for less than 2 hours; sitting for less than 2 hours; climbing, balancing, stooping bending kneeling,

crouching, and crawling occasionally, reaching, handling, fingering occasionally; needing a 10-minute break every 20-30 minutes; marked limitations in near acuity, far acuity, depth perception, and accommodation; and resting 30-45 minutes in the morning and again in the afternoon. (Tr. 753-54). Dr. Sareen found Plaintiff would be off task more than 60% of the time and would miss 3 days per month of work. (Tr. 754). Dr. Sareen also found that Plaintiff's condition existed since August 2, 2018, and he attested to having read Plaintiff's medical records before and after the onset date of disability. (Tr. 754).

In the decision, the ALJ thoroughly summarized Dr. Sareen's examination record and opinion. (Tr. 28). The ALJ was not persuaded by Dr. Sareen's opinion:

> The undersigned is not persuaded by the extreme medical source statement from Dr. Sareen which assessed the claimant to be capable of a reduced range of sedentary activities (12F/1-3). This opinion is not persuasive for several reasons. First, it appears this assessment was based upon a single examination which occurred several years after the alleged onset date. Second, when asked to support his lifting, carrying, and walking limitations with objective evidence, he reported "back pain", but without reference to any objective imaging or clinical findings. These limitations are also markedly inconsistent with imaging of the claimant's lumbar spine that has shown mild lower lumbar spondylosis (6F/2). Further, several of the diagnoses and opinions of Dr. Sareen are inconsistent with his examination findings. For example, Dr. Sareen opined the claimant to have markedly limited near acuity, far acuity, depth perception, and accommodation and he assessed the claimant to have bilateral decreased visual acuity (12F/2, 5). However, his examination found the claimant to have 20/20 far and near acuity in both eyes without glasses (12F/4). He also reported the claimant having disabling mental impairments, but his examination did not include any

> detailed mental status or psychiatric examination findings
> (12F/5). The opinions of Dr. Sareen are inconsistent with the
> examination findings of Dr. Morris, the consultative examiner,
> whose examination showed the claimant to have no trigger
> points on spinal exam, a negative straight leg raise, intact
> strength, and a normal gait (4F). Lastly, Dr. Sareen's opinions
> are inconstant with the claimant's treatment records that reflect
> only sporadic treatment since the alleged onset date.

(Tr. 29).

As to supportability and consistency, the ALJ found that Dr. Sareen supported

the extreme lifting, carrying, and walking limitation findings by noting "back pain,"

but did not reference any objective imaging or clinical findings, which showed only

mild lower lumbar spondylosis. (Tr. 29). The ALJ also noted that Dr. Sareen's own

examination findings did not support his opinions, such as marked limitations in

visual near acuity, depth perception, and accommodations, but the exam findings

showed Plaintiff to have 20/20 far and near acuity in both eyes, without glasses. (Tr.

30). The ALJ also noted that Dr. Sareen found Plaintiff to have disabling mental

impairments, but his examination did not include a detailed mental examination. (Tr.

30). The ALJ further found Dr. Sareen's opinion to be inconsistent with some of Dr.

Morris's findings that were generally normal. (Tr. 30).[2]  Finally, the ALJ also found

---

[2] Plaintiff finds ironic that the ALJ relied on a portion of Dr. Morris's examination findings to discount Dr. Sareen's opinion, even though the ALJ found Dr. Morris's opinion unpersuasive. (Doc. 20, p. 9). There is no irony. The ALJ properly considered Dr. Morris's examination findings and contrasted those findings with Dr. Sareen's opinion, even though not adopting Dr. Morris's opinion. (Tr. 29-30).

Dr. Sareen's opinion inconsistent with Plaintiff's infrequent treatment since the onset date. (Tr. 30).

Substantial evidence supports the ALJ's persuasiveness findings of Dr. Sareen's opinion and also supports the ALJ's RFC assessment.

### 3.    State Agency Physicians' Opinions

Plaintiff contends that the ALJ found the State agency physicians' opinion persuasive, partly because they were supported by Dr. Morris's consultative-examination findings, but at the same time, the ALJ found Dr. Morris's opinion unpersuasive and at odds with the State agency physicians' opinions. (Doc. 20, p. 9-10). In the decision, the ALJ found the opinions of the State agency medical consultants persuasive, who both found Plaintiff capable of a reduced range of medium work. (Tr. 29, 183-190, 217-223). The ALJ found their opinions supported by and consistent with the mild lumbar spine imaging and the consultative exam that showed Plaintiff to have normal strength and an intact gait, and mild spirometry testing. (Tr. 29). The ALJ again noted that Plaintiff had a significant gap in treatment history and that he had not received any significant medical care for about two years, between 2019-2021. (Tr. 29). Substantial evidence supports the ALJ's persuasiveness finding on the State agency medical consultants' opinions. The ALJ properly relied on Dr. Morris's consultative examination even though he did not find Dr. Morris's opinion persuasive.

In sum, substantial evidence supports the ALJ's persuasiveness findings on Dr. Morris's, Dr. Sareen's and the State agency medical consultants' opinions and substantial evidence supports the ALJ's RFC assessment that Plaintiff is capable of performing work at a medium level with limitations.

### B.  RFC as to Mental Functioning

The ALJ found Plaintiff had mild limitations in Plaintiff's ability to understand, remember, or apply information, to interact with others, and to adapt or manage oneself. (Tr. 21-22). Plaintiff argues that the ALJ was required to include limitations in the RFC for these mild mental limitations, relying on *Schink v. Comm'r of Soc. Sec.*, 935 F.3d 1245, 1251 (11th Cir. 2019). *Schink* is easily distinguishable from this case.

In *Schink*, Plaintiff appealed the denial of his application for disability benefits. *Id.* The District Court affirmed the decision. *Id.* The Eleventh Circuit reversed, finding good cause did not exist to discount two treating physicians' opinions, and substantial evidence did not support a finding that Plaintiff's mental impairments were non-severe. *Id.*

Plaintiff claims that the Eleventh Circuit remanded *Schink* because the administrative law judge included no mental limitations in the RFC. (Doc. 20, p. 14). In *Schink* – while using superseded regulations – the Court held that the administrative law judge improperly rejected the opinions of two treating physicians

without good cause. *Id.* at 1264. The Court also found substantial evidence did not support the administrative law judge's finding that the plaintiff's mental impairments were non-severe. *Id.* at 1268. Finally, the Court found that the administrative law judge erred in the RFC assessment by erroneously omitting Plaintiff's mental impairments. *Id.* at 1269. In the RFC discussion, the administrative law judge discussed Schink's physical impairments and only mentioned he had bipolar disorder with no real discussion of how this mental condition affected the plaintiff's RFC. *Id.*

Here, the ALJ found Plaintiff's medically determinable mental impairments caused no more than mild limitations in any of the functional areas and the evidence did not show that there were more than a minimal limitation in Plaintiff's ability to do basic work activities. (Tr. 22). The ALJ then concluded – and Plaintiff does not contest –that his mental impairments were non-severe. (Tr. 22). For the RFC determination, the ALJ discussed Plaintiff's mental impairments, including his subjective statements, a psychological consultative examination, and the medical records that included mention of his mental limitations. (Tr. 25-28). Moreover, in finding at most mild impairments, the ALJ was not required to include any mental limitations in the RFC. *See Faircloth v. Comm'r of Soc. Sec.*, No. 6:21-cv-782-EJK, 2022 WL 2901218, at *2 (M.D. Fla. July 22, 2022) ("Notably, an ALJ is not required to include mental limitations in the RFC finding merely because he identified mild

mental limitations in the PRT criteria.") (citing *Williams v. Soc. Sec. Admin.*, 661 F. App'x 977, 979-80 (11th Cir. 2016) (per curiam)). Substantial evidence supports the ALJ's RFC assessment.

### C.    Explanation of Determination

Plaintiff argues that the Social Security Administration repeatedly advised him that his condition may limit his ability to perform his past work, but he could perform work which requires only a very short, on-the-job training period. (Doc. 20, p. 17 (citing Tr. 272, 276, 294, 308)); (Doc. 22, p. 1-3). Plaintiff then contends that jobs that require only a very short, on-the-job training period equate to SVP 1 positions and the ALJ erred by finding Plaintiff could perform jobs at an SVP 2 level. (Doc. 20, p. 17).

As the Commissioner contends, the Explanations of Determination are prepared by disability examiners. *Martinez v. Kijakazi*, No. 8:20-cv-1025-TPB-AEP, 2021 WL 4482616, at *14 (M.D. Fla. Aug. 23, 2021), *report and recommendation adopted*, No. 8:20-cv-1025-TPB-AEP, 2021 WL 4478248 (M.D. Fla. Sept. 30, 2021) (citing SSA Program Operations Manual System ("POMS") DI 24501.001B(1)(d)(1)-(2)). "Notably, the SSA considers findings made by a state agency disability examiner at a previous level of adjudication about a medical issue, vocational issue, or the ultimate determination about whether a claimant is disabled to constitute evidence that is "'inherently neither valuable nor persuasive.'" *Id.*

(citing 20 C.F.R. § 404.1520b(c)(2)). And under the regulations, an ALJ need not provide any analysis about how he considered such evidence in rendering a decision. *Id.* (citing 20 C.F.R. § 404.1520b(c)). Thus, the ALJ was not required to consider the Explanations of Determination in rendering a decision.

### D.   RFC Requirement for Medium Work

In the hypothetical posed to the vocational expert, the ALJ limited the individual to medium work with additional limitations, finding that he could stand or walk for about six hours and sit for up to six hours, for a combined total of eight hours per day with normal breaks. (Tr. 63). Based on this hypothetical, the vocational expert testified that such an individual would be capable of performing the jobs of food service worker hospital and dining room attendant. (Tr. 32). Rather than relying on the DOT, Plaintiff instead relies on the Occupational Requirements Survey ("ORS") and argues that jobs in Standard Occupational classification ("SOC") groups 35-3041 and 35-9011, which include food service worker hospital and dining room attendant respectively, require standing for 100% of the day, or 8 hours. (Doc. 20, p. 20).

Plaintiff failed to show that he presented this argument to either the ALJ or the Appeals Council and it is therefore not part of the administrative record before the Court. *See McWilliams v. Comm'r of Soc. Sec.,* No. 8:22-CV-1047-VMC-JSS, 2023 WL 3571020, at *9 (M.D. Fla. May 4, 2023), *report and recommendation*

*adopted sub nom. McWilliams v. Comm'r, Soc. Sec. Admin.,* No. 8:22-CV-1047-VMC-JSS, 2023 WL 3568615 (M.D. Fla. May 19, 2023) (citing *Koehler v. Kijakazi,* No. 2:22-cv-210-JES-KCD, 2023 WL 1098234, at *6 (M.D. Fla. Jan. 30, 2023) ("The ORS data cannot serve as a basis for error because plaintiff did not confront the VE with this ORS data during the hearing, or otherwise present it to the ALJ, or present it to the Appeals Council."). The cases cited by Plaintiff are factually distinguishable because in those cases the ORS data had been properly raised to either the ALJ or the Appeals Council. (Doc. 20, p. 21); *see Roth v. Comm'r of Soc. Sec.*, No. 6:20-cv-550-MRM, 2021 WL 4399125, at *8 (M.D. Fla. Sept. 27, 2021); *Hernandez v. Saul*, No. CV 19-1299-AS, 2020 WL 1156402, at *5 (C.D. Cal. Mar. 10, 2020). Thus, remand is unnecessary as the Court cannot find a basis for error.

### E.    Medical Vocational Guidelines ("Grids")

Plaintiff contends that the evidence supports a limitation to no more than light work. (Doc. 20, p. 21). Plaintiff then argues that because he could no longer perform his past relevant work, had no transferable skills, and was of advanced age on the alleged onset date, Plaintiff would qualify as disabled under the Grids if he were limited to no more than light work. (Doc. 21-22). This argument fails. As stated above, substantial evidence supports the ALJ's finding that Plaintiff is capable of performing work at a medium level with additional limitations as set forth in the RFC assessment.

## III.    Conclusion

For the reasons discussed above, the Court finds that the decision of the Commissioner is supported by substantial evidence and the Commissioner applied the correct legal standard. The decision of the Commissioner is **AFFIRMED**. The Clerk of Court is directed to enter judgment consistent with this opinion, terminate all deadlines, and close the case.

**DONE** and **ORDERED** in Fort Myers, Florida on September 6, 2023.

DOUGLAS N. FRAZIER
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:

Counsel of Record
Unrepresented Parties